# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHRISTOPHER COULTER,

    Appellant,

     v.

DEPARTMENT OF THE AIR FORCE,

    Agency.

DOCKET NUMBER
SF-1221-17-0522-W-1

DATE: July 12, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Waukeen Q. McCoy, Esquire, San Francisco, California, for the appellant.

Kathryn Price, El Segundo, California, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1  The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REVERSE the initial decision, and REMAND the appeal to the Western Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      At all times relevant to this appeal, the appellant was employed by the agency as an Air Traffic Control (ATC) Specialist at Travis Air Force Base (TAFB), California. Initial Appeal File (IAF), Tab 8 at 41-45. According to the appellant, in March 2013, he began collecting and compiling information related to ATC operations at TFAB. IAF, Tab 1 at 25. He alleges that, from 2013 to 2015, he tracked and recorded "all safety violations, procedural violations, non-compliance, errors and mishaps to prevent further mishaps/incidents from occurring" in a document called the "Administrative Pro Time Tracker and Daily Extraction Notes [E]xcel spreadsheet." IAF, Tab 6 at 4. The appellant asserts that he experienced ongoing retaliatory behavior by his superiors and coworkers for tracking incidents and maintaining the spreadsheet. *Id*. at 5.

¶3      On February 17, 2016, the agency removed the appellant from his position based on one charge of conduct unbecoming a Federal employee and one charge of failure to follow directives. IAF, Tab 1 at 7-10. On August 3, 2016, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that he made several protected disclosures and that the agency took several actions against him in retaliation for making those disclosures. *Id*. at 20-38. On April 25, 2017, OSC informed the appellant that it had terminated its inquiry into his allegations and was closing his case. *Id*. at 39-42. OSC also advised the appellant that he may have a right to seek corrective action before the Board. *Id*.

¶4      The appellant timely filed an IRA appeal with the Board, IAF, Tab 1, and the administrative judge issued a jurisdictional order informing him of what was required to establish Board jurisdiction over his claims, IAF, Tab 3. Both parties responded to the order, IAF, Tabs 4, 6-14, and the appellant filed a rebuttal to the agency's pleading in which he primarily argued that his overall tracking in his

spreadsheet of alleged safety violations, protocol violations, mishaps, and incidents constituted a protected disclosure, IAF, Tab 15 at 7-9.   More specifically, though, he highlighted six alleged disclosures and five personnel actions that he asserts were taken in retaliation for those disclosures.[2]   *Id*. at 16-17.

¶5      In particular, the appellant alleged that he tracked and disclosed the following:  (1) a civilian technician violated agency protocol, which resulted in $100,000 worth of damaged equipment; (2) the same civilian technician and two coworkers failed to follow protocol in a separate incident, which resulted in $29,000 worth of damaged equipment;[3] (3) another coworker failed to properly secure modems; (4) in February 2012, there was a mid-air collision between a light civilian aircraft and a helicopter, and he tracked the incident and kept notes on it in his spreadsheet; (5) in September 2015, the Chief Master Sergeant (CMSgt) attempted to decertify his ATC ratings; and (6) "in or about 2015," his supervisor placed him on unauthorized duty restrictions, and he tracked this occurrence in his spreadsheet.  *Id*.  The appellant claimed that, in retaliation for these disclosures, the agency:  (1) denied him overtime pay despite the fact that he worked overtime hours; (2) denied him a year-end bonus and time-off award in 2013, 2014, and 2015; (3) changed his job duties by placing unauthorized restrictions on his duties and responsibilities;[4] (4) placed workplace restrictions

---

[2] In the appellant's initial response to the jurisdiction order, he listed several additional alleged personnel actions.  IAF, Tab 6 at 5-7.  It appears that, through the course of the proceedings below, the appellant narrowed his allegations regarding personnel actions, which he more clearly lays out in his rebuttal to the agency's response to the jurisdictional order.  IAF, Tab 15 at 9-12.  We have relied on the appellant's rebuttal in analyzing the personnel actions at issue in the appeal.

[3] The appellant treats purported disclosures 1 and 2 as one disclosure, IAF, Tab 15 at 16; however, we have separated them on review to adequately analyze each one individually.

[4] The appellant broadly alleges that the agency placed unauthorized duty restrictions on him in retaliation for his disclosing his tracking spreadsheet.  IAF, Tab 15 at 10-11.  He

on him; (5) placed him on administrative leave; and (6) removed him from Federal service.  IAF, Tab 6 at 7, Tab 15 at 9-12.

¶6    On August 7, 2017, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction.  IAF, Tab 20, Initial Decision (ID).  The administrative judge found that the appellant nonfrivolously alleged that purported disclosures 1, 2, 3, and 5 were protected; however, she found that the appellant failed to exhaust those claims before OSC.  ID at 8-13.  She also found that the appellant failed to exhaust his remaining disclosures before OSC.  ID at 4-13.

¶7    The appellant has filed a petition for review, arguing that the administrative judge erred in dismissing his appeal for lack of jurisdiction, that he made nonfrivolous allegations of protected disclosures, and that he exhausted those claims with OSC.  Petition for Review (PFR) File, Tab 6 at 15-18.  In an affidavit attached to his petition, he alleges an additional 14 claims of either protected disclosures or protected activity.[5]  *Id.* at 23-26.  For clarity, we have numbered the additional allegations raised on review sequentially with the allegations presented below and addressed by the administrative judge.

¶8    In allegation 7, the appellant claimed that he conducted "playbacks" almost once a week between 2012 and 2015 of ATCs failing to give traffic advisories and traffic alerts and that he shared this information with his superiors; in allegation 8, he detailed a specific "playback" that he conducted on April 22, 2014, wherein he alleged that ATCs violated an order and that he recorded it in his spreadsheet, which was later sent to his superiors; in allegation 9, he claimed

also claims as a separate personnel action that agency officials placed unauthorized duty restrictions on him in retaliation for a specific incident in August 2015.  *Id*. at 11.  Because the alleged personnel actions taken by the agency are effectively the same, we have combined them.

[5] In the affidavit, the appellant also repeats three of the alleged disclosures explicitly made below.  PFR File, Tab 6 at 24-25.  Those allegations will not be reiterated here.

that, in April 2013, he filed a grievance against his former supervisor and the CMSgt for denying him overtime pay in violation of agency regulations; in allegation 10, he claimed that, in April 2013, he filed a grievance against his former supervisor for implementing a rotating shift bid process in violation of agency regulations; in allegation 11, he claimed that a coworker failed to provide ATC automation pre-duty briefings, that he logged these failures in his spreadsheet, and that he disclosed this violation to his superiors; in allegation 12, he claimed that two other employees committed several security violations, which included, but were not limited to, leaving equipment room exit doors open, leaving equipment cabinets unlocked, and leaving unsecured laptops unattended overnight; and in allegation 13, he claimed that he tracked coworkers' failure to provide air traffic control instructions.[6] *Id*. at 17, 23-25.

¶9        In allegation 14, the appellant claimed that, in October 2014, he filed a grievance against his supervisor for violating the automated time and attendance systems by changing his overtime hours to regular hours; in allegation 15, he claimed that, in November 2014, he filed another grievance against his supervisor for placing unauthorized duty restrictions on him; in allegation 16, he claimed that a coworker improperly shared his personal files[7] and information in violation of the agency's Personally Identifiable Information (PII) policy; in allegation 17, the appellant claimed that, in September 2015, he filed a grievance regarding the CMSgt's attempt to decertify his ratings; in allegation 18, he claimed that, in October 2015, he filed a grievance against his supervisor and the Lieutenant

---

[6] Specifically, the appellant alleged that he tracked his coworkers' failure to provide merging target procedures.  PFR File, Tab 6 at 17.

[7] Although the appellant indicates that his "personal files" were shared, he may mean that his "personnel files" were shared; however, we have stated his claim as he asserted it.

Colonel (Lt. Col.) for denying him his *Weingarten* rights[8] during an investigatory meeting; in allegation 19, the appellant claimed that the CMSgt and the Lt. Col. forced him to illegally backdate a controller evaluation, and that he eventually filed a grievance on the matter; and in allegation 20, he claimed that between January 2014 and December 2015, he filed multiple inspector general (IG) complaints against his superiors. *Id*. at 25-26.

¶10    In his petition for review, the appellant also alleges as an additional personnel action that the agency imposed "restrictions" on him, which included being told that he was not permitted in the break room and the automation office and that he could not attend award ceremonies during off-duty hours. *Id*. at 11. He also alleges that he was required to check in with the watch supervisor before and after his shift and was told not to park in a certain location. *Id*. The agency has filed a response. PFR File, Tab 8.

## ANALYSIS

¶11    The Board has jurisdiction over an IRA appeal if the appellant proves by preponderant evidence that he exhausted his administrative remedy before OSC and makes nonfrivolous allegations that: (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023); *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 11; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). The Board generally treats OSC exhaustion as a

---

[8] The U.S. Supreme Court, in *National Labor Relations Board v. Weingarten, Inc.*, 420 U.S. 251, 260 (1975), recognized that a member of a bargaining unit has a right to representation at investigatory interviews.

threshold determination before considering whether the appellant's claims constitute nonfrivolous allegations of protected disclosures or protected activities. *See Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶¶ 4-5 (2014) (stating that the first element to Board jurisdiction over an IRA appeal is exhaustion by the appellant of his administrative remedies before OSC and that the next requirement is that he nonfrivolously allege that he made a protected disclosure or engaged in protected activity). Accordingly, our analysis will look first to whether the appellant exhausted his administrative remedy with OSC and, if that threshold requirement is met, then to whether he nonfrivolously alleged that he made a protected disclosure or engaged in a protected activity that was a contributing factor to an agency personnel action. *See Salerno*, 123 M.S.P.R. 230, ¶ 5. In determining if an appellant has made nonfrivolous allegations, the Board looks to his allegations rather than the agency's contrary evidence or view of the evidence. *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368-69 (Fed. Cir. 2020).

<u>The appellant exhausted 20 claims of alleged protected disclosures or protected activities and 6 alleged personnel actions before OSC.</u>[9]

¶12      To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must have provided OSC with a sufficient basis to pursue an investigation into his allegations of whistleblower reprisal. *Chambers*, 2022 MSPB 8, ¶ 10. Generally, exhaustion can be demonstrated through the appellant's initial OSC complaint, evidence the original complaint was amended (including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations), and the appellant's written responses to OSC referencing the amended allegations. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). Alternatively, exhaustion may be proved through other

---

[9] The appellant appears to have met the timeliness requirements set forth in 5 U.S.C. § 1214(a)(3) for filing an IRA appeal with the Board.

sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in his appeal. *Chambers*, 2022 MSPB 8, ¶ 11.

¶13 As briefly noted above, in the initial decision, the administrative judge found that the appellant failed to prove that he exhausted any of the six alleged disclosures before OSC that he raised below. ID at 10-13. On review, the appellant submits an affidavit reiterating his alleged disclosures and activities raised before the administrative judge and, as noted, identifies new disclosures and activities. PFR File, Tab 6 at 21-33. In that affidavit, he states that he had "multiple conversations with the [OSC] investigator where [he] stated the aforementioned disclosures" that he made and "the retaliation" he was receiving. *Id*. at 33. Although the Board generally will not consider evidence submitted for the first time on review absent a showing that it was unavailable before the record closed below despite the party's due diligence, *Cleaton v. Department of Justice*, 122 M.S.P.R. 296, ¶ 7 (2015), *aff'd*, 839 F.3d 1126 (Fed. Cir. 2016), the appellant's affidavit concerns the exhaustion of administrative remedies, which is a jurisdictional issue, and jurisdiction is always before the Board, *see Lovoy v. Department of Health and Human Services*, 94 M.S.P.R. 571, ¶ 30 (2003). Accordingly, we have considered the appellant's affidavit, and we find that it is sufficient to establish by preponderant evidence that he exhausted his administrative remedy with OSC regarding the 20 alleged disclosures and activities he has raised with the Board. *See Chambers*, 2022 MSPB 8, ¶ 11.

¶14 The exhaustion requirement for an IRA appeal also precludes the Board from considering a personnel action that was not raised before OSC. *Mason*, 116 M.S.P.R. 135, ¶ 8. Here, the appellant alleged below that the agency denied him overtime pay, denied him year-end bonuses in 2013, 2014, and 2015, restricted his duties, placed him on administrative leave, and removed him from his position. IAF, Tab 15 at 9-12. On review, he also asserts that the agency placed restrictions on him in the workplace. PFR File, Tab 6 at 11-15. The

appellant's OSC complaint makes clear that he exhausted his claims that the agency denied him overtime pay and year-end bonuses, IAF, Tab 1 at 25, 35, restricted his duties, *id*. at 30-31, placed him on administrative leave, *id*. at 30, and removed him, *id*. at 27, 34. Although his OSC complaint does not reference the workplace restrictions, his affidavit submitted on review mentions these restrictions and asserts that he raised this claim with OSC. PFR File, Tab 6 at 28. Thus, between the appellant's OSC complaint submitted below and his affidavit submitted on review, we find that the appellant exhausted his claims that the agency took the six personnel actions listed above against him. *See Chambers*, 2022 MSPB 8, ¶ 11; *Mason*, 116 M.S.P.R. 135, ¶ 8.

The appellant made nonfrivolous allegations that he made at least one protected disclosure or engaged in at least one protected activity.

¶15    As stated above, to establish jurisdiction before the Board in an IRA appeal, the appellant must, after exhausting his administrative remedy before OSC, make nonfrivolous allegations that he made a protected disclosure or engaged in protected activity. *Salerno*, 123 M.S.P.R. 230, ¶ 5. A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Id*., ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id*.

> *The appellant nonfrivolously alleged that he made a protected disclosure with respect to allegations 2-8, 11-13, and 16.*

¶16    As discussed above, in allegations 2-4, 7-8, 11-13, and 16, the appellant asserts that he disclosed to his superiors various incidents in which agency employees failed to follow protocols, policies, and Joint Orders, which resulted in, among other things, damaged equipment, equipment being left unsecured, a mid-air collision, and violations of PII.  PFR File, Tab 6 at 17, 21, 23-26. Regardless of the specific laws, rules, or regulations that the appellant believed were violated, the gravamen of these allegations is that he disclosed to his superiors several instances in which he believed coworkers engaged in conduct that violated laws, rules, or regulations.[10]  *See Hudson v. Department of Veterans Affairs*, [104 M.S.P.R. 283](#), ¶ 11 (2006) (stating that there is no de minimis exception to an allegation that an agency violated a law, rule, or regulation). Although we have concerns about the degree of detail provided in these allegations, as the appellant has not specifically alleged when the disclosures were made or, in some instances, specifically to whom, the burden at the jurisdictional stage is a low one, and we must resolve any doubt or ambiguity in favor of finding jurisdiction.  *See Usharauli v. Department of Health and Human Services*, [116 M.S.P.R. 383](#), ¶ 19 (2011) (stating that any doubt or ambiguity as to whether the appellant made a nonfrivolous jurisdictional allegation should be resolved in favor of finding jurisdiction); *Jessup v. Department of Homeland Security*, [107 M.S.P.R. 1](#), ¶ 10 (2007) (observing that the appellant's burden of

---

[10] Although the appellant has not identified the specific law, rule, or regulation in each disclosure that he believes was violated, the U.S. Court of Appeals for the Federal Circuit has stated that an appellant need not allege a violation of law with precise specificity when the "statements and circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation." *See Langer v. Department of the Treasury*, [265 F.3d 1259](#), 1266 (Fed. Cir. 2001).  Here, in light of the low threshold for making a nonfrivolous allegation, the appellant has provided sufficient information to implicate an identifiable law, rule, or regulation when not otherwise expressly provided.

making a nonfrivolous allegation is low and requires only a minimal sufficient showing). Accordingly, because the appellant provided a brief description of wrongdoing related to a violation of law, rule, or regulation as contemplated in section 2302(b)(8) and asserted that he disclosed this alleged wrongdoing to his superiors, we find that his assertions in this regard constitute nonfrivolous allegations that he made protected disclosures.

¶17    In allegation 5, the appellant asserts that he disclosed that the CMSgt attempted to decertify his ATC ratings, and in allegation 6, he alleges that he disclosed that his supervisor placed him on unauthorized duty restrictions. PFR File, Tab 6 at 25-26. Of the types of wrongdoing set forth in 5 U.S.C. § 2302(b)(8), the appellant's claims in allegations 5 and 6 most closely align with allegations of an abuse of authority. An employee discloses an abuse of authority when he alleges that a Federal official has arbitrarily or capriciously exercised power which has adversely affected the rights of any person or has resulted in personal gain or advantage to herself or to preferred other persons. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015). Here, the appellant's allegations that the CMSgt attempted to decertify his ratings and that his supervisor imposed unauthorized duty restrictions on the appellant could both result in an adverse effect on the appellant's rights, as both concern the appellant's performance. Thus, we find that the appellant nonfrivolously alleged that he disclosed an abuse of authority with respect to allegations 5 and 6.

¶18    Based on the foregoing, we find that the appellant nonfrivolously alleged that he made a protected disclosure with respect to allegations 2-8, 11-13, and 16. We now turn to the appellant's protected activities.

> *The appellant nonfrivolously alleged that he engaged in protected activity with respect to allegations 9, 14-15, and 20.*

¶19    The remainder of the appellant's allegations are either related to the filing of grievances or an IG complaint, both of which are considered protected activity under 5 U.S.C. § 2302(b)(9). As relevant here, however, protected activity under

5 U.S.C. § 2302(b)(9)(A)(i) includes "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation . . . *with regard to remedying a violation* of [section 2302(b)(8)]" (emphasis added). Thus, only grievances seeking to remedy whistleblower reprisal are covered under section 2302(b)(9)(A)(i). 5 U.S.C. § 1221(e)(1); *see Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶¶ 6-7 (2013).

¶20    The appellant claims in allegation 9 that he filed a grievance in April 2013 against his previous supervisor and the CMSgt for denying him overtime pay when he worked overtime hours. PFR File, Tab 6 at 23-24. The grievance does not appear in the record, but the appellant alleged that he was denied overtime pay due to his tracking spreadsheet. *Id.* at 11. Because the appellant has alleged that his tracking spreadsheet included various instances of wrongdoing by coworkers or agency officials and that he provided this spreadsheet to his superiors, we liberally construe the disclosure of this spreadsheet to constitute whistleblowing activity and, therefore, find that the appellant nonfrivolously alleged that this grievance sought to remedy reprisal for whistleblowing. Accordingly, we find that the appellant made a nonfrivolous allegation that the April 2013 grievance constitutes protected activity. *See Mudd*, 120 M.S.P.R. 365, ¶ 7.

¶21    The grievances referenced in allegation 14 (regarding the claim that the appellant's supervisor improperly logged into the appellant's timecard and changed his time from unscheduled overtime to regular hours) and allegation 15 (regarding the appellant's placement on unauthorized duty restrictions by his supervisor) both appear in the record. IAF, Tab 1 at 11-12, 17-19. The appellant filed the grievance detailed in allegation 14 to obtain the appropriate overtime pay that he was denied, he claims, as a result of reprisal for maintaining and disclosing his tracking spreadsheet, which, as explained above, when liberally construed, constitutes whistleblowing activity. *Id*. at 11-12. The grievance detailed in allegation 15 sought the rescission of a memorandum that imposed

duty restrictions, according to the appellant, in reprisal for his maintaining and disclosing the tracking spreadsheet, which, again, when liberally construed, constitutes whistleblowing activity. *Id*. at 17-19. Because both grievances were filed to remedy personnel actions alleged to have been taken in retaliation for whistleblowing activity, we find that the appellant nonfrivolously alleged that the grievances described in allegations 14 and 15 constitute protected activity. *See Mudd*, 120 M.S.P.R. 365, ¶ 7.

¶22        Finally, the appellant claims in allegation 20 that he filed several IG complaints between January 2014 and December 2015, PFR File, Tab 6 at 26. Based on our review, no IG complaint is included in the record, but the filing of an IG complaint is considered protected activity under 5 U.S.C. § 2302(b)(9)(C) regardless of whether it was filed in connection with remedying a violation of section 2302(b)(8). *See* 5 U.S.C. § 1221(e)(1). Accordingly, we find that the appellant made a nonfrivolous allegation that IG reports that he filed from 2014 to 2015 constitute a protected activity.

¶23        In sum, we find that the appellant made nonfrivolous allegations that he engaged in protected activities in allegations 9, 14-15, and 20. We now address the appellant's allegations that are not protected.

> *The appellant failed to make a nonfrivolous allegation that he made a protected disclosure or engaged in protected activity with respect to allegations 1, 10, and 17-19.*[11]

¶24    In allegation 1, the appellant claims that he disclosed to his superiors that a coworker violated agency protocols which resulted in $100,000 worth of damaged equipment.  IAF, Tab 15 at 16; PFR File, Tab 6 at 24.  The administrative judge found that the appellant's allegations constituted a nonfrivolous allegation of a violation of a law, rule, or procedure.[12]  ID at 8.  We find, however, that the appellant's allegations are not sufficiently specific or detailed to meet the above-referenced standard, as he does not explain, in contrast with the disclosures discussed above, the underlying conduct that he believes violated the unspecified protocol.  *Compare Salerno*, 123 M.S.P.R. 230, ¶¶ 2, 6-7 (finding that an appellant's disclosure to OSC that an agency's communication security system was inadequate was not sufficiently specific or detailed to meet the nonfrivolous allegation standard), *with Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶¶ 14-15 (2002) (finding that the appellant's allegation that his supervisor violated a specific and detailed rule from the agency's Procurement Instruction Memorandum constituted a nonfrivolous allegation of a violation of a law, rule, or regulation).  Thus, we find that the appellant failed to make a nonfrivolous allegation of a protected disclosure.  *See Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 14 (2014) (stating that disclosures must be specific and

---

[11] As explained below, a finding of jurisdiction over the appellant's appeal only requires us to find that the appellant nonfrivolously alleged that he made at least one protected disclosure or engaged in at least one protected activity that was a contributing factor in at least one personnel action.  *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 13; *see also infra* ¶ 30.  Although we have found above that the appellant nonfrivolously alleged that he made at least one protected disclosure or engaged in at least one protected activity, we nonetheless address the remaining alleged disclosures and activities in order to simplify the administrative judge's remaining jurisdictional undertaking on remand.

[12] Nonetheless, the administrative judge found that the appellant failed to prove that he exhausted this claim with OSC.  ID at 10.

detailed, and not simply vague allegations of wrongdoing); *Keefer v. Department of Agriculture*, 82 M.S.P.R. 687, ¶ 10 (1999) (explaining that disclosures must not be broad and imprecise and should be "sufficiently clear").

¶25       In allegation 10, the appellant asserts that he filed a grievance in April 2013 against his previous supervisor for implementing a rotating shift bid process. PFR File, Tab 6 at 24. In allegation 17, the appellant asserts that he filed a grievance regarding the CMSgt's attempt to decertify his ATC ratings. *Id*. at 26. In allegation 18, he asserts that he filed a grievance against his superior for denying him his *Weingarten* rights. *Id*. In allegation 19, the appellant alleges that he filed a grievance against his superiors because they forced him to illegally backdate a controller evaluation containing false information. *Id*. As explained above, only grievances seeking to remedy whistleblower reprisal are covered under section 2302(b)(9)(A)(i). 5 U.S.C. § 1221(e)(1); *see Mudd*, 120 M.S.P.R. 365, ¶¶ 6-7. Based on our review of the record, either the referenced grievances do not appear in the record or the appellant has not alleged that they were filed to remedy reprisal for whistleblower activity, as he has not claimed that the implementation of a rotating shift bid, the decertification of his ATC ratings, the denial of his *Weingarten* rights, or being forced to sign a backdated evaluation constituted personnel actions taken against him by the agency in retaliation for making a protected disclosure or engaging in a protected activity. PFR File, Tab 6 at 24, 26. Accordingly, we find that the appellant failed to make a nonfrivolous allegation that the grievances described in allegations 10 and 17-19 constitute protected activity under 5 U.S.C. § 2302(b)(9). *See Mudd*, 120 M.S.P.R. 365, ¶ 7.

¶26       To reiterate, we find that the appellant failed to nonfrivolously allege that he made a protected disclosure or engaged in protected activity with respect to allegations 1, 10, and 17-19. However, we find that the appellant nonfrivolously alleged that he made a protected disclosure or engaged in protected activity with respect to allegations 2-9, 11-16, and 20.

<u>The appellant made nonfrivolous allegations that the agency took at least one personnel action against him.</u>

¶27      As discussed above, the appellant claimed that the agency took six personnel actions against him in reprisal for his protected disclosures or activities.  Specifically, the appellant claimed that the agency:  (1) denied him overtime pay despite the fact that he worked overtime hours; (2) denied him a year-end bonus and time off award in 2013, 2014, and 2015; (3) changed his job duties by placing unauthorized restrictions on his duties and responsibilities; (4) placed workplace restrictions on him; (5) placed him on administrative leave; and (6) removed him from Federal service.  IAF, Tab 6 at 7, Tab 15 at 9-12.  After careful review of the record, we find that the appellant made nonfrivolous allegations that the denials of overtime pay and year-end bonuses constitute personnel actions because they both concern pay.  5 U.C.S. § 2302(a)(2)(A)(ix).  We also find that the appellant made a nonfrivolous allegation of a personnel action regarding the unauthorized duty restrictions because a significant change in duties, responsibilities or working conditions is covered under section 2302(a)(2)(A)(xii).  Further, the Board has held that placement on administrative leave constitutes a personnel action.  *Hagen v. Department of Transportation*, 103 M.S.P.R. 595, ¶ 13 (2006).  Finally, a removal is an agency action covered under chapter 75.  5 U.S.C. § 2302(a)(2)(A)(iii).  Thus, the appellant has made nonfrivolous allegations that these actions constitute personnel actions under section 2302(a)(2)(A).

¶28      Regarding the appellant's allegation that the agency imposed workplace restrictions on him, he asserts that he was told by his superiors not to be in the break room or the automation office, or to attend award ceremonies during off-duty hours.  PFR File, Tab 6 at 11.  He also claims that he was told not to park in a certain location and that he was the only employee who had these restrictions placed on him.  We find that these assertions do not rise to the level of a nonfrivolous allegation that the agency took a personnel action against him

under 5 U.S.C. § 2302(a)(2)(A). The only category encompassed by the appellant's allegation is a "significant change in duties, responsibilities, or working conditions" under section 2302(a)(2)(A)(xiii). In interpreting this phase, the Board has explained that "only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii)." *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16 (2022). The appellant's allegations that he could not park in a certain location or be present in certain rooms do not affect his duties or responsibilities, and the appellant has not alleged how these restrictions have a significant effect on his working conditions. Accordingly, we find that the appellant failed to nonfrivolously allege that the agency's imposition of workplace restrictions amounts to a personnel action under section 2302(a)(2)(A).

## The appellant made nonfrivolous allegations that at least one protected disclosure or activity was a contributing factor to at least one personnel action.

¶29        The next step in the analysis of an IRA appeal is to determine whether the appellant nonfrivolously alleged that the above-discussed protected disclosures or activities were contributing factors in a personnel action. *Salerno*, 123 M.S.P.R. 230, ¶ 5. To satisfy the contributing factor criterion at the jurisdictional stage of an IRA appeal, the appellant only need raise a nonfrivolous allegation that the fact of, or the content of, the protected disclosure or protected activity was one factor that tended to affect the personnel action in any way. *Id.*, ¶ 13. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in

the personnel action. *Id.* With regard to the knowledge prong of this test, an appellant may establish, for jurisdictional purposes, that a disclosure or activity was a contributing factor in a personnel action by nonfrivolously alleging that the official taking the personnel action had constructive knowledge of the disclosure or activity. *See Wells v. Department of Homeland Security*, 102 M.S.P.R. 36, ¶ 8 (2006). Constructive knowledge may be established by demonstrating that an individual with actual knowledge of the disclosure or activity influenced the official accused of taking the retaliatory action. *Id.* Regarding the timing prong of the test, the relevant inquiry is the time between when the agency official taking the action had actual or constructive knowledge of the disclosure or activity—not necessarily the date of the disclosure or activity itself—and the time that the action was taken. *See id.*

¶30 Due to the complexity and volume of the appellant's claims, our discussion here is limited to addressing our ultimate inquiry of whether the appellant has established jurisdiction over his appeal, to wit, whether he has nonfrivolously alleged that at least one protected disclosure or activity was a contributing factor in at least one personnel action. *See Skarada*, 2022 MSPB 17, ¶ 13 (explaining that, in cases when an appellant has alleged multiple personnel actions, the Board has jurisdiction over the appeal when the appellant exhausts his administrative remedy and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosures). As further discussed below, however, on remand, the administrative judge should address each disclosure and personnel action over which the Board has jurisdiction, in addition to considering the merits of the appellant's claims.

> *The appellant nonfrivolously alleged that at least one protected disclosure or activity was a contributing factor in the denial of overtime pay.*

¶31 Regarding the appellant's first alleged personnel action, the denial of overtime pay, it appears that the appellant alleged two different instances for when he was not properly compensated for overtime hours; the instance that led

to the filing of the April 2013 grievance (the subject of another alleged protected activity), for which he does not provide a date, and the instance that occurred in September 2014. IAF, Tab 1 at 11-12; PFR File, Tab 6 at 23-24. Further, he has alleged that the CMSgt, the Major, and his supervisor were the agency officials responsible for the denial of overtime pay. PFR File, Tab 6 at 23-24, 28.

¶32        Because the alleged 2013 denial of overtime pay predates many of the appellant's alleged protected disclosures and protected activities, for the sake of efficiency, we consider here the alleged September 2014 denial of overtime pay.[13] Regarding allegation 9 (concerning the April 2013 grievance related to the initial denial of overtime pay), this grievance was filed in April of 2013, which was followed within 2 years by the September 2014 denial of overtime pay. Thus, the appellant's assertions in allegation 9 meet the timing prong of the knowledge/timing test with respect to the 2014 denial of overtime pay. *See Salerno*, 123 M.S.P.R. 230, ¶ 14 (holding that a personnel action taken within approximately 1 to 2 years of the protected disclosure or activity satisfies the knowledge/timing test). Additionally, the appellant alleges that he logged "this information" in his tracking spreadsheet and that he disclosed the spreadsheet to his superiors. *Id.* at 23-24. Although the appellant's reference to "this information" and to his "superiors" is not precise, at the jurisdictional stage of the proceedings, it is reasonable to construe this assertion as one alleging that he disclosed the grievance and the subject matter of the grievance to a category of agency officials that includes, at least, the CMSgt and the appellant's supervisor. *See Usharauli*, 116 M.S.P.R. 383, ¶ 19; *Jessup*, 107 M.S.P.R. 1, ¶ 10. As such, we find that the appellant also nonfrivolously alleged that at least two of the agency officials responsible for the November 2014 denial of overtime pay had knowledge of the April 2013 grievance detailed in allegation 9. Thus, the

[13] On remand, the administrative judge should include in the jurisdictional consideration the 2013 denial of overtime pay.

appellant has also met the knowledge prong of the knowledge/timing test. Accordingly, we find that the appellant nonfrivolously alleged that at least one protected disclosure or protected activity was a contributing factor in the agency's decision to deny him overtime pay in November 2014. *See Salerno*, 123 M.S.P.R. 230, ¶ 13.

> *The appellant nonfrivolously alleged that at least one protected disclosure or activity was a contributing factor in the agency's decision to deny him a year-end bonus in 2014 and 2015, but failed to nonfrivolously allege the same with respect to the 2013 denial of a year-end bonus.*

¶33    The appellant has alleged that the agency denied him year-end bonuses in 2013, 2014, and 2015. PFR File, Tab 6 at 11-12. Although the appellant failed to explicitly name the agency official responsible for the denials, the record suggests that his direct supervisor denied those year-end bonuses. IAF, Tab 1 at 31, Tab 8 at 24. Regarding the 2013 denial, the appellant has not asserted when in 2013 this denial occurred. Because this allegation lacks sufficient specificity to more fully assess the appellant's claim, we only consider allegations of alleged protected disclosures and activities that occurred prior to 2013, as those that occurred after the 2013 denial of overtime could not have been contributing factors to it. *See Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 11 (2015) (explaining that events that preceded an appellant's disclosures will have "little to no relevance"); *Mason*, 116 M.S.P.R. 135, ¶ 27 (finding that disclosures occurring after the personnel actions at issue could not have been contributing factors in those actions). The only alleged protected disclosure or protected activity that occurred prior to the relevant time period is the appellant's disclosure detailed in allegation 4. In allegation 4, he alleges that he disclosed to the Major and flight security officers that a midair collision occurred as a result of his coworkers' failure to provide traffic alerts and traffic advisories in violation of an agency Joint Order. PFR File, Tab 6 at 21. However, he has not alleged that he made this disclosure to his supervisor, who was responsible for the denial of the 2013 year-end bonus, nor has he alleged that the officials to whom

he made the disclosure had any influence on the appellant's supervisor's decision. Thus, the appellant's allegations do not meet the knowledge/timing test.

¶34    However, the knowledge-timing test is not the only way for an appellant to satisfy the contributing factor element. *See Stiles v. Department of Homeland Security*, 116 M.S.P.R. 263, ¶ 24 (2011). If the appellant fails to make nonfrivolous allegations that satisfy that test, we must consider other factors, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Id.* Here, the appellant's challenge to the agency's basis for denying him the year-end bonus is a generic accusation that simply repeats his belief of reprisal. PFR File, Tab 6 at 11-12. Further, by the appellant's own admission, his alleged disclosure in allegation 4 did not implicate his direct supervisor. *Id*. at 9-10. Based on the foregoing, we find that the appellant failed to nonfrivolously allege that he made at least one protected disclosure or engaged in at least one protected activity that was a contributing factor in the agency's decision to deny him a year-end bonus in 2013.

¶35    Turning to the appellant's allegation that the agency also denied him a 2014 year-end bonus, we again observe that the appellant has not asserted a specific date on which this denial occurred. However, it is reasonable to assume that it occurred sometime in 2014. In allegation 9, the appellant alleges that he filed a grievance regarding the denial of overtime pay in April of 2013, and as discussed above, we have found that he nonfrivolously alleged that that grievance was protected under 5 U.S.C. § 2302(b)(9). Because an April 2013 grievance occurred within 1-2 years of the 2014 denial of the appellant's year-end bonus, we find that the appellant has met the timing prong of the knowledge/timing test. *See Salerno*, 123 M.S.P.R. 230, ¶ 14. Additionally, as discussed above, the appellant has alleged that he tracked the information related to the grievance in his spreadsheet, and that he shared the spreadsheet with his superiors. Again, at

this stage of the proceedings, we construe this assertion as one alleging that he disclosed the information in allegation 9 to at least his direct supervisor, who was the agency official responsible for the denial of the appellant's 2014 year-end bonus. *See supra*, ¶ 34; *see also Usharauli*, 116 M.S.P.R. 383, ¶ 19; *Jessup*, 107 M.S.P.R. 1, ¶ 10. As such, we find that the appellant also met the knowledge prong of the knowledge/timing test. Accordingly, we find that the appellant nonfrivolously alleged that he made at least one protected disclosure or engaged in at least one protected activity that was a contributing factor in the agency's decision to deny his year-end bonus in 2014.

¶36        Regarding the 2015 denial, the appellant again does not allege specifically when in 2015 this denial occurred. However, in allegation 14, the appellant alleged that he filed a grievance in October of 2014, and we have found above that he nonfrivolously alleged that that grievance was protected under 5 U.S.C. § 2302(b)(9). Because an alleged protected activity that occurred in October of 2014 occurred within 1-2 years of any date in 2015, we find that the appellant has established the timing prong of the knowledge/timing test. *See Salerno*, 123 M.S.P.R. 230, ¶ 14. Additionally, as noted above, the appellant's supervisor was responsible for the 2015 denial of overtime pay, and the record makes clear that the October 2014 grievance was sent directly to him. IAF, Tab 1 at 11-13. Thus, we find that the appellant's allegations also meet the knowledge prong of the knowledge/timing test. Accordingly, we find that the appellant nonfrivolously alleged that he made at least one protected disclosure or engaged in at least one protected activity that was a contributing factor in the denial of his 2015 year-end bonus.

> *The appellant nonfrivolously alleged that at least one protected disclosure or activity was a contributing factor in the agency's decision to impose unauthorized duty restrictions on him.*

¶37        Regarding the alleged unauthorized duty restrictions, the appellant has alleged that his supervisor placed him on unauthorized duty restrictions on

November 13, 2014. IAF, Tab 1 at 17-19. As explained above, in allegation 14, the appellant alleges that he engaged in protected activity in October 2014 by filing a grievance covered under 5 U.S.C. § 2302(b)(9). Again, because a protected activity that occurred in October of 2014 proceeded by 1 month the November 2014 restriction on his duties, we find that the appellant has established the timing prong of the knowledge/timing test with respect to the duty restrictions action *See Salerno*, 123 M.S.P.R. 230, ¶ 14. Further, because the October 2014 grievance described in allegation 14 was sent directly to the appellant's supervisor and that supervisor was responsible for this action, we also find that the appellant's allegations meet the knowledge prong of the knowledge/timing test. Accordingly, we find that the appellant nonfrivolously alleged that he made at least one protected disclosure or engaged in at least one protected activity that was a contributing factor in the agency's decision to place him on unauthorized duty restrictions.

> *The appellant nonfrivolously alleged that at least one protected disclosure or protected activity was a contributing factor in the agency's decision to place him on administrative leave.*

¶38 The appellant alleged that the Lt. Col. placed him on administrative leave in October 2015. IAF, Tab 15 at 12. Regarding allegation 16, the appellant alleged that he disclosed that a coworker had improperly accessed and shared his personal files in violation of the agency's PII policy to his direct supervisor and the Lt. Col. on or around October-November 2014. PFR File, Tab 6 at 26. Because the appellant has alleged that the Lt. Col. was responsible for his placement on administrative leave and the Lt. Col. had knowledge of the disclosure contained in allegation 16, we find that the appellant's allegations meet the knowledge prong of the knowledge/timing test. Additionally, because the appellant has alleged that his placement on administrative leave occurred approximately 1 year after the disclosure, we find that his allegations meet the timing prong of the knowledge/timing test. *See Salerno*, 123 M.S.P.R. 230, ¶ 14. Accordingly, we

find that the appellant nonfrivolously alleged that he made at least one protected disclosure or engaged in at least one protected activity that was a contributing factor in the agency's decision to place him on administrative leave.

> *The appellant nonfrivolously alleged that at least one protected disclosure or activity was a contributing factor in the agency's decision to remove him.*

¶39     The record shows that the Colonel (Col.) issued the notice removing the appellant on February 17, 2016. IAF, Tab 1 at 7, 10. Looking again at the appellant's allegation 16, which is discussed directly above, the appellant asserted that he made this disclosure sometime in October or November 2014 to his direct supervisor and the Lt. Col. PFR File, Tab 6 at 26. Because this time period is within 2 years of the date of his removal, we find that the appellant has met the timing prong of the knowledge/timing test. *See Salerno*, 123 M.S.P.R. 230, ¶ 14. Further, although the appellant has not alleged that the Col. himself was aware of this disclosure, he has alleged that it was actually the Lt. Col. who prompted the removal action and that the Lt. Col. was aware of this disclosure. PFR File, Tab 6 at 26. As we explained above, an agency official responsible for the action has constructive knowledge of a disclosure if a person with actual knowledge influenced the responsible official's action. *See Wells*, 102 M.S.P.R. 36, ¶ 8. Here, because the appellant has alleged that the Lt. Col. influenced the ultimate decision to remove him from his position and that he had actual knowledge of this disclosure, PFR File, Tab 6 at 26, we find that the appellant has alleged that the Col. had constructive knowledge of the disclosure, *see Wells*, 102 M.S.P.R. 36, ¶ 8. Thus, the appellant's allegations also meet the knowledge prong of the knowledge/timing test. Accordingly, we find that the appellant nonfrivolously alleged that he made at least one protected disclosure or engaged in at least one protected activity that was a contributing factor in the agency's decision to remove him.

**CONCLUSION**

¶40        Based on the foregoing, we find that the appellant proved by preponderant evidence that he exhausted 20 allegations of protected disclosures and activities with OSC and made a nonfrivolous allegation that at least one personnel action was taken in retaliation for at least one alleged protected disclosure or protected activity.  *See Skarada*, 2022 MSPB 17, ¶ 13.  Specifically, we find that the appellant nonfrivolously alleged that (1) his April 2013 grievance, as discussed in allegation 9, was a contributing factor in the agency's decision to deny him overtime pay in November of 2014 and a year-end bonus in 2014; (2) his October 2014 grievance, as discussed in allegation 14, was a contributing factor in the agency's decision to deny him a year-end bonus in 2015; (3) his October 2014 grievance, as discussed in allegation 14, was a contributing factor in the agency's decision to place him on duty restrictions in November of 2014; and (4) his disclosure regarding a coworker's improper access and sharing of personal files in violation of the agency's PII policy, as detailed in allegation 16, was a contributing factor in the agency's decision to place him on administrative leave and to remove him.  Although we have not considered here whether the appellant has nonfrivolously alleged that all of his alleged protected disclosures and protected activities were contributing factors to the personnel actions set forth above, we find that the appellant established Board jurisdiction over his IRA appeal. *See id*.

¶41        Because we have not fully resolved the Board's jurisdiction with respect to each of the appellant's individual claims, we remand the appeal to the administrative judge for a full and complete discussion of whether the appellant nonfrivolously alleged that the remainder of his alleged protected disclosures and protected activities were contributing factors in the personnel actions discussed above.  Thereafter, the administrative judge should hold a hearing on the merits where the appellant must prove by preponderant evidence that he made a protected disclosure or engaged in a protected activity that was a contributing

factor in a personnel action.[14] If the appellant makes such a showing, the agency shall have the opportunity to prove by clear and convincing evidence that it would have taken the personnel action even in the absence of the appellant's protected disclosure or protected activity.[15] *See* 5 U.S.C. § 1221(e); *Lu*, 122 M.S.P.R. 335, ¶ 11.

## ORDER

¶42     For the reasons discussed above, we grant the appellant's petition for review, reverse the initial decision, find that the Board has jurisdiction over his appeal, and remand this case to the Western Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    /s/ for

                                   Jennifer Everling
                                   Acting Clerk of the Board

Washington, D.C.

---

[14] The merits hearing should be limited only to the claims over which the administrative judge finds jurisdiction and the claims over which we have found jurisdiction here.

[15] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.